**Affirmed and Memorandum Opinion filed March 2, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00573-CV

---

### CITY OF HOUSTON, Appellant

### V.

### KEVIN FISHER, Appellee

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-78413**

---

### MEMORANDUM OPINION

In this personal injury case arising from a vehicle collision between City of Houston Police Officer Pinkney and appellee Kevin Fisher, the City of Houston appeals the denial of its plea to the jurisdiction based on governmental immunity. The City complains that it is protected by governmental immunity in this case because Pinkney was not acting in the course and scope of his employment at the time of the accident. We affirm.

BACKGROUND

On June 27, 2019, Officer Pinkney was on duty from 6 a.m. to 2 p.m. and "was assigned to the Houston Police Department Patrol Region 3 Command, Southwest Division, Shift 1." At about 1:42 p.m., he finished eating lunch at a restaurant. Thereafter, he went back to his police vehicle to drive to the police station. Officer Pinkney had not fastened his seatbelt before driving his vehicle. When the traffic light turned green, Officer Pinkney "hit the gas" while trying to put on his seat belt. He acknowledged he was distracted putting on his seat belt and rear-ended Fisher. He agreed that the accident was his fault because he took his "eyes off the road" and "looked down" to untangle his seat belt, which got caught around his radio antenna.

On December 8, 2020, Fisher filed suit against the City "pursuant to the Texas Tort Claims Act, Texas Civil Practice & Remedies Code § 101.001, *et seq.*" alleging claims for negligence, negligence per se, and gross negligence. Among other things, Fisher claimed that Officer Pinkney's failure to pay attention, maintain a safe distance, control his speed, and operate his vehicle in a safe manner was the sole proximate cause of the collision and "[a]s a proximate result of the collision, [Fisher] sustained injuries and damages." About a month later, the City filed an answer asserting, among other things, governmental immunity from suit and liability "to all of Plaintiff's claims."

On September 8, 2021, the City filed its plea to the jurisdiction, attaching as evidence excerpts of Officer Pinkney's deposition, Officer Pinkney's affidavit, and a Houston Police Department Crash Questionnaire. The City asserted that Fisher's "claims fall outside the TTCA's limited waiver of immunity because at the time of the accident, [Officer] Pinkney was not acting within his scope of employment." The City claimed that although Officer Pinkney "was in his Houston Police

Department vehicle, he was on his lunch break and had just gotten back in the vehicle to return to the police station" from the restaurant and "was not performing and had not yet performed any official duties at the time of the collision" so that "the TTCA's limited waiver of Houston's immunity does not apply."

About a week later, Fisher filed his response to the City's plea to the jurisdiction. He contended that the TTCA's limited waiver of the City's immunity applies because Officer Pinkney acted within the scope of his employment at the time of the accident. In that regard, Fisher stated that at the time of the accident, Officer Pinkney was "an on-duty Houston Police Department officer, operating a Houston Police Department issued SUV, on a public road, and he was required to obey and enforce all traffic laws, respond to emergencies, respond to dispatch calls for assistance, make an arrest of a witnessed crime, and was required to perform all other forms of public service of a Houston Police Department officer."

The next day, the City filed its reply to Fisher's response, claiming it "has proven Officer Pinkney was not performing any duties for his employer at the time of the motor vehicle collision with" Fisher and Fisher failed to show that Officer Pinkney "was performing any duties for his employer at the time of the collision."

On September 20, 2021, the trial court signed an order denying the City's plea to the jurisdiction. The City filed a timely notice of interlocutory appeal.[1]

## ANALYSIS

The City argues that the trial court should have granted its plea to the jurisdiction because Officer Pinkney was not acting within the scope of his employment at the time of the accident.

---

[1] This court has jurisdiction to consider an interlocutory appeal from the denial of a plea to the jurisdiction by a governmental unit seeking a dismissal based on governmental immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

3

## I. Standard of Review

The existence of subject matter jurisdiction is a question of law that can be challenged by a plea to the jurisdiction. *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We review a trial court's ruling on a plea to the jurisdiction *de novo*. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019); *Vitol, Inc. v. Harris Cnty. Appraisal Dist.*, 529 S.W.3d 159, 165-66 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Parties may submit evidence supporting or opposing a plea to the jurisdiction, which we review under the same standard applicable to a traditional motion for summary judgment. *Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 345. We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016). If the evidence creates a fact issue as to the jurisdictional issue, then it is for the factfinder to decide and the trial court must deny the plea to the jurisdiction. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009); *Miranda*, 133 S.W.3d at 228. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Kirwan*, 298 S.W.3d at 622; *Miranda*, 133 S.W.3d at 228.

## II. Governing Law

Governmental immunity and sovereign immunity are related common law doctrines protecting the government from suit and liability. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018); *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011). Sovereign immunity protects the state and its various divisions (such as agencies and boards) from suit and liability while

4

governmental immunity provides similar protection to the political subdivisions of the state (such as counties, cities, and school districts). *Annab*, 547 S.W.3d at 612; *Norman*, 342 S.W.3d at 57-58; *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). An assertion of governmental immunity implicates a court's subject matter jurisdiction and is therefore properly asserted in a plea to the jurisdiction. *Annab*, 547 S.W.3d at 613; *Miranda*, 133 S.W.3d at 225-26.

Unless waived, governmental immunity from suit defeats a trial court's subject matter jurisdiction. *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The Texas Tort Claims Act provides a limited waiver of governmental immunity if certain conditions are met. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.025. As relevant here, governmental immunity from suit and liability is waived for personal injuries or property damage proximately caused by the wrongful act or omission or the negligence of a governmental employee acting within the scope of employment if the harm or damage "arises from the operation or use of a motor-driven vehicle" and "the employee would be personally liable to the claimant according to Texas law." *Id*. § 101.021(1).

The Act defines an "employee" as "a person, including an officer or agent, who is in the paid service of a governmental unit" and defines the "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2), (5).

Whether a police officer was on duty or off duty is not dispositive as to whether his conduct falls within the scope of his employment. *Garza v. Harrison*, 574 S.W.3d 389, 403 (Tex. 2019). Nor do "mere objective indicia of official

capacity—for example, wearing a uniform, flashing a badge, or using a police vehicle—establish[] course and scope of employment as a matter of law." *Id.* at 405. Rather, we must consider the capacity in which the officer was acting at the time he committed the allegedly tortious act. *City of Houston v. Mejia*, 606 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *Harris Cnty. v. Gibbons*, 150 S.W.3d 877, 882 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In other words, we examine what the police officer was doing at the time of the incident and why he was doing it. *See Mejia*, 606 S.W.3d at 905; *Lara v. City of Hempstead*, No. 01-15-00987-CV, 2016 WL 3964794, at *4 (Tex. App.—Houston [1st Dist.] July 21, 2016, pet. denied) (mem. op.).

Generally, whether a person, including a police officer, is acting within the scope of his employment depends on whether the act from which an injury arose was in furtherance of his employer's business and for the accomplishment of the objective for which he was employed. *See Mejia*, 606 S.W.3d at 905; *Lara*, 2016 WL 3964794, at *3; *City of Balch Springs v. Austin*, 315 S.W.3d 219, 225 (Tex. App.—Dallas 2010, no pet.). The scope-of-employment analysis is an objective inquiry considering whether there is a connection between the employee's job duties and the alleged tortious conduct. *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017). Mixed motives do not preclude a police officer's action from being within his employment's scope if his action served a purpose of his employer in addition to any other purpose the act served. *Mejia*, 606 S.W.3d at 905 (citing *City of Houston v. Lal*, 605 S.W.3d 645, 649 (Tex. App.—Houston [1st Dist.] 2020, no pet.)). Accordingly, a police officer's action falls outside the scope of his employment if, and only if, the action did not serve any purpose of his employer. *Id.* at 905-06 (citing *Garza*, 574 S.W.3d at 400-01); *Lal*, 605 S.W.3d at 649.

When a vehicle involved in a collision is owned by the driver's employer, a

6

presumption arises that the driver was acting in the course and scope of his employment when the collision occurred. *City of Houston v. Carrizales*, No. 01-20-00699-CV, 2021 WL 3556216, at \*4 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, pet. denied) (mem. op.); *Molina v. City of Pasadena*, No. 14-17-00524-CV, 2018 WL 3977945, at \*4 (Tex. App.—Houston [14th Dist.] Aug. 21, 2018, no pet.) (mem. op.). "Evidence that the driver was on a personal errand at the time of the accident rebuts the presumption." *Molina*, 2018 WL 3977945, at \*4; *Carrizales*, 2021 WL 3556216, at \*4; *Lara*, 2016 WL 3964794, at \*4. "It is then the plaintiff's burden to produce other evidence that the driver was in the course and scope of his employment." *Molina*, 2018 WL 3977945, at \*4; *see also Carrizales*, 2021 WL 3556216, at \*4; *Lara*, 2016 WL 3964794, at \*4.

## III. Entitlement to Governmental Immunity

The City cites *Carrizales*, *Molina*, and *Lara*, asserting that it is entitled to governmental immunity because "[d]riving a City vehicle to and from lunch or to and from work is not conduct in course and scope" and, therefore, Officer Pinkney did not act within the scope of his employment at the time of the accident. The City particularly relies on *Carrizales* and *Molina*, stating that "[j]ust like the employees in *Carrizales* and *Molina*, at the time of the accident in this case, Officer Pinkney was not acting in furtherance of any of his regular duties on behalf of his employer; he was returning to work from lunch and had not yet performed any official duties. He was not within the scope of his employment."

However, the City's cited cases are factually distinguishable. In *Carrizales*, the court concluded evidence that City utility worker Griffin was driving a City-owned truck when she hit Carrizales's car raised the presumption that she was acting within the scope of her employment. 2021 WL 3556216, at \*5. The court also concluded that this presumption was rebutted because Griffin (1) "described

7

her job duties as 'investigat[ing] stoppages,' 'investigat[ing] and inspect[ing] sewer complaints,' and otherwise responding to public requests for service"; (2) "testified that when the collision with Carrizales occurred, she was driving the sewer jet truck back to her place of work after stopping by her home for lunch"; (3) was alone in the truck at the time of the collision; and (4) explained that "[i]t takes two people to perform the job." *Id*. at *2, 4-5.

In *Molina*, the court determined that evidence of the City's engineering department inspector, Rendon, striking and injuring Molina while Rendon was driving a City-owned truck raised the presumption that Rendon was acting within the scope of his employment. 2018 WL 3977945, at *4. The court also determined that this presumption was rebutted because evidence showed that Rendon (1) was not engaged in his employer's business at the time of the accident; (2) "had deviated from the performance of his duties (*i.e.*, to inspect concrete pours, paving of streets, drainage, water lines, sewer lines, pump stations, and water tanks, etc.) to eat lunch, albeit with the City's permission" allowing a one-hour lunch break; (3) "had not resumed those duties" at the time of the accident; and (4) "was in the process of returning to work" at his next inspection site. *Id*. at *1, 4-5.

In *Lara*, Assistant Chief of the Hempstead Police Department Christian was commuting in his assigned police vehicle from his home in Harris County to work in Hempstead when he collided with Lara's car. 2016 WL 3964794, at *1. The court found that the evidence raised the presumption that Christian was acting within the scope of his employment with the City of Hempstead. *Id*. at *4. To rebut this presumption, the City presented evidence that Christian (1) was "expressly authorized" to "use a police vehicle to commute to and from his work"; and (2) "is primarily assigned to 'office' duties, has no regular duties involving

8

operation of a police vehicle, was off-duty at the time of the collision, was not being paid for his service at that time, had no official duties or assignments at that time, was driving to work, and would be considered on-duty only upon his arrival at work." *Id*. at \*1.

The court stated that "Hempstead produced evidence with its plea to the jurisdiction that Christian was off-duty, was not being paid for his time, had no official duties, and was merely commuting to work at the time of the collision[,] . . . had not performed any official duties before the collision and, indeed, had not performed any services for the city or been asked to do so since leaving work on Friday of the previous week." *Id*. at \*4. The court therefore found that (1) this "evidence supports Hempstead's contention that Christian was not acting in the scope of his employment, as he was neither engaged in the 'performance for a governmental unit of the duties of an employee's office or employment' nor 'in or about the performance of a task lawfully assigned to an employee by competent authority;'" and (2) "[t]his evidence is sufficient to rebut the presumption that Christian was acting in the scope of his employment." *Id*.

Here, the City did not provide evidence that Officer Pinkney was still on his lunch break nor that he had not yet returned to work. As a patrol officer, he was not "primarily assigned to 'office' duties" but had "regular duties involving [the] operation of a police vehicle," and he did not need "two people to perform [his] job." *See Molina*, 2018 WL 3977945, at \*4-5; *see also Carrizales*, 2021 WL 3556216, at \*4-5; *Lara*, 2016 WL 3964794, at \*4. As a patrol officer and in the absence of evidence that he was still on his lunch break or doing a personal errand unrelated to his employment, Officer Pinkney had already returned to his "place of work" when he got back to his patrol car, resuming his responsibilities as a patrol officer by driving his car. Based on the evidence before us, we cannot conclude

the City rebutted the presumption that Officer Pinkney acted within the scope of his employment at the time of the accident. We cannot find that his conduct, *i.e.*, driving his patrol car (as a patrol officer) after his lunch break, did not serve any purpose of his employer so as to fall outside of the scope of his employment. *See Mejia*, 606 S.W.3d at 905; *Lal*, 605 S.W.3d at 649.

Accordingly, we reject the City's contention that the evidence conclusively establishes that Officer Pinkney was not acting within the scope of his employment at the time of the collision. Therefore, we overrule the City's issue.

## CONCLUSION

We affirm the trial court's order denying the City's plea to the jurisdiction.

/s/ Meagan Hassan
Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.